UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DEBORAH GODWIN, et al | CIVIL ACTION NO. 14-2749 |
| VERSUS | U.S. DISTRICT JUDGE JAMES |
| J. FLINT LIDDON &<br>HANK MCWHORTER | U.S. MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss, doc. #21, filed by Hank McWhorter and a motion to dismiss, doc. #24, filed by J. Flint Liddon. Both motions are referred to me by the district judge for report and recommendation. McWhorter's pro se motion as well as Liddon's motion question whether this court has personal jurisdiction over them.

## Background

Plaintiffs are the widow and surviving children of Woodie Godwin, a long haul truck driver who was killed in a vehicular accident in Alabama in November 2012 caused by a phantom vehicle. Plaintiffs are all residents of the State of Louisiana and defendants are both residents of the State of Alabama. Liddon is a Birmingham attorney and McWhorter is a Greene County deputy sheriff.

Plaintiffs allege that McWhorter investigated the accident and "ran" the potential liability lawsuit for Liddon.  A contract of representation was signed but Liddon then advised Godwin that he would not be able to assist her because there was no chance of recovery against anyone who might have been responsible for the accident. Later, however, Liddon discovered that the accident was caused by a phantom vehicle which fact would bring into play uninsured motorist coverage on the

1

truck. Liddon so advised Godwin. The parties disagree as to what happened next. Liddon claims that he continued to correspond with Godwin and that she authorized him to proceed to settle the case with the insurer which he did, depositing the settlement funds into his trust account after negotiating the check in accordance with the limited power of attorney contained in his employment contract.

Godwin terminated the relationship by certified letter, engaged Louisiana counsel, and filed the instant suit. In their unverified complaint, plaintiffs claim that Liddon settled the suit without authority, negotiated the insurer's settlement check without authority and refused to release the funds in his trust account. They also allege that Liddon and McWhorter traveled to Louisiana in an attempt to intimidate Godwin into agreeing to the settlement. Finally, plaintiffs ask this court, in the alternative, to award Liddon attorney fees based on *quantum meruit*. In general, plaintiffs claim damages for fraud and conversion.

There is also pending in Alabama state court a suit seeking the determination of the amount of attorney fees due Liddon.

Defendant Liddon seeks dismissal of this suit for improper service of process and for lack of personal jurisdiction over him and, alternatively, asks this court to abstain or at least stay this suit pending the Alabama state court's determination. I construe McWhorter's handwritten, pro se, motion to dismiss to be one based on lack of personal jurisdiction.

### Law and Analysis

The plaintiff carries the burden of making a *prima facie* showing that the defendants have meaningful contacts with the forum state. Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 564, 469 (5th Cir. 2006), quoting Wyatt v. Kaplan, 686 F.3d 276, 280 (5th Cir. 1982). The court may consider the entire record, but plaintiff's allegations in the complaint must be taken as true unless

controverted by affidavit. Where conflicts exist, resolution must be made in favor of the plaintiff. See Revell v. Lidov, 317 F.3d 467, 469 (5th Cir.2002), quoting Alpine View Co., Ltd. v. Atlas Copco AB, 205 F3d 208, 215 (5th Cir. 2000).

Federal courts in Louisiana may exercise jurisdiction over a non-resident defendant only to the extent allowed by Louisiana's Long Arm statute and as consistent with due process. Stripling v. Jordan Production Co., LLC, 234 Fed. 3d 863 (5th C. 2000). Louisiana's long arm statute extends jurisdiction to the constitutional limits of due process. La. R.S. 13:3201(B).[1]  Burstein v. State Bar

---

[1] Louisiana's long arm statute provides:

"§3201. Personal jurisdiction over nonresidents
A.  A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this   State.
(3) Causing injury or damage by an offense or quasi
    offense committed through an act or omission in this
    State.
(4) Causing injury or damage in this state by an offense   or quasi offense committed  through an act or omission  outside of this state if he regularly does or solicits business, or engages in any other persistent course of  conduct, or derives revenue  from goods used or  consumed or services rendered in this state.
(5) Having an interest in, using or possessing a real   right on immovable property in  this state.
(6) Non-support.
(7) Parentage.
(8) Manufacturing of a product or component thereof which  caused damage or injury  in this state.
B.   In addition to the provisions of Subsection A, a court of  this state may exercise  personal jurisdiction over a  nonresident on any basis consistent with the  constitution of this state and of the constitution of the United  States."

of California, 693 Fed.2d 511 (5th C. 1982). Jurisdiction consistent with due process exists where the defendant has purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." Mink v. AAAA Development LLC, 190 Fed. 3d 333, 336 (5th C. 1999) (quoting International Shoe., supra).

As the Fifth Circuit explained in Luv n' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465 (5th C. 2006), the Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction in personam of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, Helicopteros Nacionales de Colombia, S.A. v. Hall, 415, 104 S.Ct. 1868, (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. Id. at 414, 104 S.Ct. 1868 n. 9.FN2 Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." Id. at 414, 104 S.Ct. 1868 n. 8.

Minimum contacts may be established either through contacts sufficient to assert specific jurisdiction or contact to assert general jurisdiction. Alpine View Co. Ltd. v. Atlas Coco AB, 205 Fed. 3d 208, 214 (5th C. 2000). Only where a non-resident defendant has "purposely directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities" are the defendants' contacts sufficient to support the exercise of specific

jurisdiction over that defendant. Burger King v. Rudzewicz, 105 S. Ct. 2174 (1985). Stated differently, specific jurisdiction exists where a defendant 'purposely avails itself of the privileges of conducting activities within the forum state, thus invoking the benefits of its laws." Dickson Marine, Inc. v. Panalpina, Inc. 179 Fed. 3d 331 (5th C. 1999).. [2]

In this case, plaintiffs have not attempted to show, by affidavit or otherwise, any history of continuous and systematic contacts between the non-resident defendants and Louisiana so as to create general jurisdiction.

In regard to specific jurisdiction, the Fifth Circuit has adopted a three part test: 1) whether the defendant purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there, 2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts, and 3) whether the exercise of personal jurisdiction is fair and reasonable. Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374 (5th C. 2002) In order to be held to have purposefully availed itself of the privilege of conducting business, the defendant's conduct must show that it "reasonably anticipates being haled into court" in Louisiana. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Luv N' Care, Ltd. v. Insta-Mix, Inc. et al, 438 F.3d 465 (5th C. 2006).

---

[2] The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.' See Burger King v. Rudzewicz, 471 U. S. 462, 474 (1985) (citing International Shoe Co. v. Washington, 326 U. S. 310, 316 (1945). As the court in Revell v. Lidov, 317 F.3d 467 (5th C. 2002), noted, "even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction–in other words, while it may be doing business *with* [Louisiana], it is not doing business *in* [Louisiana]." (Texas in original).

5

Because the allegations of the unverified complaint are controverted by defendant's declaration, the court cannot assume the allegations are true. Nevertheless, all parties agree that defendants traveled together to Louisiana in an attempt to meet with plaintiff Godwin. Plaintiffs claim it was in an attempt to intimidate her into signing the settlement documents; defendant Liddon claims it was in regard to a previously arranged meeting between him and his client. McWhorter asserts (though his statement is not in affidavit form and is not made under penalties for perjury) that he was simply the driver. Liddon 's declaration shows he and McWhorter were only in Louisiana for an hour and a half or so. McWhorter says perhaps 6 hours at the most. All parties agree that during that time, Liddon was unable to meet with his client Godwin, though he did see Michelle Chambliss, a daughter.

Although Liddon and McWhorter did intentionally enter Louisiana for the purpose of a meeting with Liddon's client, it cannot be said that they would have reasonably anticipated being hailed into a Louisiana court because of that single aborted meeting. Even though the plaintiffs' claim in brief that they were upset by learning the defendants had traveled to Louisiana, their actual claims, as set forth in their complaint, are with regard to the attorney's actions in Alabama, not in Louisiana. As defendants point out in brief, "'the bare existence of an attorney-client relationship is not sufficient" to establish jurisdiction over a party.'" We're Talkin' Mardi Gras, LLC v. Davis, 192 F. Supp.2d 635 (E.D. La. 2002), quoting Trinity Industries, Inc., Myers & Assc's, Ltd., 41 F.3d 229 (5th C. 1995). Instead, the court must consider the actual contacts made in Louisiana. Here they were, as discussed above, nil. It would be unfair and unreasonable to assert jurisdiction over these defendants under the circumstances presented here.

Because this court does not have general or specific personal jurisdiction over these two defendants, it need not reach the merits of defendant Liddon's alternative arguments that Liddon was not served properly or that the court should abstain or stay the proceedings.

For the foregoing reasons, because this court has no personal jurisdiction over the defendants, IT IS RECOMMENDED, that defendant's Motions to Dismiss, doc's # 21 and 24, be GRANTED.

IT IS FURTHER RECOMMENDED that this court's prior ORDER, doc. #11, requiring that the disputed amount of the funds be kept in Mr. Liddon's trust account remain in place until order of the Alabama state judge in the suit regarding the amount of attorney fees pending there.

## **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 2nd day of February, 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE